UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JESSICA A. HARNESS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:16-CV-586-DCP |
|  | ) |  |
| NANCY A. BERRYHILL,[1] | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is the Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support [Docs. 22 & 23] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25]. Jessica A. Harness ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT** the Plaintiff's motion and **DENY** the Commissioner's motion.

**I.    PROCEDURAL HISTORY**

On April 10, 2013, the Plaintiff filed an application for disability insurance benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, claiming a period of disability that began on April 10, 2013. [Tr. 20, 155-60]. After her application was denied initially

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 108]. A hearing was held on April 10, 2015. [Tr. 37-63]. On July 14, 2015, the ALJ found that the Plaintiff was not disabled. [Tr. 20-32]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on September 29, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 10, 2013, the application date (20 CFR 416.971 *et seq*.)
>
> 2. The claimant has the following severe impairments: morbid obesity, depression, mild degenerative disc disease of the lumbar spine, fibromyalgia, and migraine headaches (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can sit, stand and/or walk for a total of about 6 hours each in an 8-hour workday. She must avoid climbing ladders, ropes or scaffolds but can occasionally climb ramps or stairs. She can frequently balance. She can occasionally stoop, kneel, crouch or crawl. She must avoid concentrated exposure to hazards, such as unprotected heights and machinery. She is limited to simple, routine, repetitive tasks but can apply commonsense and understanding to carry out oral, written and diagrammatic instructions.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on February 9, 1980 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of jobs skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 10, 2013, the date the application was filed (20 CFR 416.920(g)).

[Tr. 22-31].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## VI. ANALYSIS

On appeal, the Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence given her diagnosis of fibromyalgia and associated symptoms. While the Plaintiff submits specific errors committed by the ALJ—that the ALJ did not properly weigh the medical opinions of treating physician, Larry Wolfe, M.D., or consultative examiner, William

5

Robinson, M.D., and erred in assessing the Plaintiff's credibility [Doc. 23 at 12-16]—the Plaintiff's underlying argument is that the ALJ failed to appreciate the nature and difficulties associated with fibromyalgia cases which undercuts the reasons cited by the ALJ for discounting the opinion evidence and the Plaintiff's credibility.

The record is unclear when or who initially diagnosed the Plaintiff with fibromyalgia, but the impairment was first mentioned in the record by Dr. Robinson who performed a consultative examination on July 6, 2013. [Tr. 316-19]. In noting the Plaintiff's complaints of pain all over her body, Dr. Robinson observed that "fibromyalgia has been mentioned by her doctors but not definitely diagnosed." [Tr. 316]. On examination, Dr. Robinson noted mild tenderness over the coccyx as well as tenderness and stiffness upon palpation throughout the Plaintiff's body, including her shoulders, elbows, knees, feet, and neck. [Tr. 318]. Dr. Robinson concluded that "[t]his would meet the criteria for fibromyalgia [since] she is tender and aching and hurting everywhere." [*Id.*]. The Plaintiff also exhibited mild pain with internal and external rotation of both hips, slight tenderness of the heels, some restriction in her range of motion of her spine, negative straight leg raises, no redness, swelling, joint enlargement, muscle wasting, or spams, full muscle strength, normal motor coordination, and no sensory loss. [*Id.*]. In addition, Dr. Robinson observed the Plaintiff in some pain performing heel-to-toe walk, and she was able to get on and off the exam table without trouble but moved slowly. [Tr. 319]. Review of x-rays of the left shoulder, left hip, and cervical spine were normal, but diagnostic imagines of the lumbosacral spine showed joint degenerative changes secondary to arthritis at L3-4 and L4-5. [*Id.*].

Dr. Robinson assessed that the Plaintiff could carry up to 30 pounds for three hours and up to 15 pounds for five hours a day, she could lift the same amount and possibly more, she could sit for an unlimited amount of time, and she could stand for four hours and walk for two hours. [*Id.*].

Dr. Robinson based the foregoing restrictions on the Plaintiff's fibromyalgia pain. [*Id.*].

The Plaintiff also received treatment for fibromyalgia from Dr. Wolfe, the Plaintiff's treating physician since at least September 30, 2014. [Tr. 380]. Treatment notes indicate that the Plaintiff was previously receiving pain management from Fred Foshee, M.D. [*Id.*]. Dr. Foshee found that the Plaintiff's "entire back was tender" and noted that the Plaintiff complained of constant, severe, aching, and burning pain in her back that radiated to all four extremities. [Tr. 410-12]. Other than tenderness exhibited, the Plaintiff's examination findings were largely normal. [Tr. 412]. The Plaintiff also attended physical therapy for roughly one-and-a-half months. [Tr. 329-78]. When she was discharged on August 1, 2014, treatment records indicate that the Plaintiff continued to complain of considerable pain, she ambulated with increased trunk sway, and she was tender to palpation over the lower lumbar paraspinal, bilateral sacroiliac joints, and bilateral piriformis muscles. [Tr. 330].

When the Plaintiff later presented to Dr. Wolfe, the Plaintiff complained that her symptoms had worsened over the past four years, and she was hurting all the time, had no energy, had frequent gastrointestinal issues, and experienced headaches. [Tr. 380]. On examination, the Plaintiff moved slowly, she had some difficulty getting on the exam table, and she appeared to almost lose her balance. [Tr. 381]. Her joints showed no edema, deformity, inflammation, or swelling, but her fibromyalgia trigger points were "quite tender to varying degrees," particularly in her shoulders, hips, and knees. [*Id.*]. Subsequent examinations consistently noted tenderness to palpation as well as complaints of pain in her legs, shoulders, neck, and back. [Tr. 380-96]. Treatment primarily consisted of pain medication. [*Id.*].

In his "Medical Source Statement (Physical)" completed on October 1, 2014, Dr. Wolfe stated that the Plaintiff's impairments included severe fibromyalgia and chronic pain syndrome

7

which prevented her from full-time employment and affected her ability to sit, stand, walk, stoop, or climb. [Tr. 378]. Dr. Wolfe opined that the Plaintiff would need to avoid environmental conditions such as cold, heat, wetness, humidity, noise, vibrations, and pollutants; she could lift or carry up to five pounds frequently and up to 10 pounds occasionally; and she could occasionally use her hands for fine manipulation only and could occasionally raise her arms over her shoulders. [*Id.*]. Dr. Wolfe explained that the Plaintiff's impairments caused extreme pain, necessitating the need to elevate her legs six to eight times daily for 15-20 minutes, lay down for 30 minutes to an hour, and take unscheduled breaks during an eight-hour workday. [Tr. 379]. Contemporaneous treatment notes from Dr. Wolfe relay his belief that the Plaintiff "is definitely disable from all forms of gainful employment[,] and I suspect that in the future her symptoms will simply worsen." [Tr. 382].

Addressing the opinion evidence of record, the ALJ assigned "some weight" to Dr. Robinson's opinion to the extent that x-rays showed degenerative disc disease in the lumbar spine, but noted, "However, the objective medical evidence and physical exam findings do not support the degree of limitation on sitting or standing as recommended by Dr. Robinson." [Tr. 28]. The ALJ then concluded that "Dr. Wolfe's extreme limitations are not supported by the substantial evidence of record." [Tr. 29]. Citing to treatment notes from the Plaintiff's physical therapist and Dr. Foshee, the ALJ found that the medical evidence demonstrated a mild antalgic gait and tenderness to palpation of the lumbar spine, shoulders, and hips, but that the Plaintiff was negative for straight leg raise testing and no evidence of deformity or swelling in any joints. [*Id.*]. The ALJ also noted that Dr. Wolfe's treatment recommendations were conservative, primarily consisting of treatment by pain medication, his examination findings were disproportionate to the severe limitations he assessed, and he appeared to primarily rely upon the Plaintiff's subjective

8

allegations, "uncritically accept[ing] as true most, if not all, of what the claimant reported." [*Id.*]. The ALJ also found Dr. Wolfe's conclusion that the Plaintiff is disabled was an issue reserved to the Commissioner and was therefore not entitled to any weight. [*Id.*].

The ALJ also addressed the opinions provided by the nonexamining state agency physicians. [Tr. 29]. The first state agency physician, who rendered an opinion at the initial level, opined that the Plaintiff could perform a reduced range of light work with frequent limitations of overhead reaching, occasional postural limitations, and no concentrated exposure to hazards. [Tr. 72-74]. At the reconsideration level, a second state agency physician concluded that the Plaintiff could perform medium work with identical postural limitations opined by the first state agency physician. [Tr. 88-90]. Although the ALJ did not assign a specific weight to either opinion, it appears that the ALJ gave great weight to the first state agency physician's opinion as the Plaintiff's RFC mirrors most of the limitations assessed by the initial reviewing physician. [*Compare* Tr. 24 *with* Tr. 72-74].

Finally, the ALJ discounted the Plaintiff's subjective allegations because the Plaintiff's "treatment has been essentially routine and/or conservative in nature." [Tr. 25]. The ALJ also cited to the lack of objective medical evidence and physical exam findings to support the degree of limitation alleged by the Plaintiff. [*Id.*]. The ALJ observed that the Plaintiff's daily activities, such as light household chores and taking her children to the park, demonstrated that the Plaintiff was not as limited as she alleged given her complaints of pain and other symptoms. [*Id.*].

The Plaintiff argues that the ALJ did not properly consider the medical evidence of record given her diagnosis of fibromyalgia. The Plaintiff submits that Dr. Wolfe properly relied on the Plaintiff's subjective complaints in assessing the functional effects of the Plaintiff's fibromyalgia and that his opinion is consistent with his own treatment notes, as well as those from Dr. Foshee

9

and the Plaintiff's physical therapist, all of whom have documented complaints of pain and tenderness upon examination. [Doc. 23 at 11-13].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Here, given the Plaintiff's diagnosis and treatment of fibromyalgia, the Court finds that substantial evidence does not support the ALJ's decision to discount the opinion of Dr. Wolfe. First, the ALJ rejected Dr. Wolfe's opinion because the medical evidence, including mild antalgic gait, negative straight leg raises, and no evidence of deformity or swelling of the joints, was disproportionate to the limitations Dr. Wolfe assessed. "[T]he ALJ's rejection of the treating

physicians' opinions as unsupported by objective evidence in the record obviously stems from his fundamental misunderstanding of the nature of fibromyalgia." *Kalmbach v. Comm'r of Soc. Sec.,* 409 F. App'x 852, 861 (6th Cir. 2011) (finding the ALJ's rejection of the plaintiff's treating source opinions due to the lack objective findings and reliance on the plaintiff's subjective complaints did not amount to "good reason"). Unlike most medical determinable impairments, fibromyalgia patients "will usually yield normal results–a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988).

In *Preston*, the Sixth Circuit was unpersuaded by the ALJ's finding of "fairly normal clinical and test results" where medical records consistently documented the plaintiff's complaints of pain, stiffness, and fatigue—classic fibromyalgia symptoms—and the plaintiff's treating physician opined that she suffered from fibromyalgia based upon observations of characteristic tenderness in certain focal points, recognition of hallmark symptoms, and systematic elimination of other diagnosis. 854 F.2d at 8210. While the ALJ in the instant case acknowledged that the medical evidence demonstrated tenderness to palpation of the lumbar spine, shoulders, and hips, the ALJ appears to downplay the significance of these finding, which the Court emphasizes were documented by all medical examiners of record, in favor of the normal to mild findings exhibited on objective testing. *See Cooper v. Comm'r of Soc. Sec.*, No. 4:13-CV-11883, 2014 WL 4606010, at *20 (E.D. Mich. June 17, 2014) ("[B]ecause treating opinions hold substantial weight, the uniformity of those opinions and their consistency with other medical opinions is significant."), *adopted by*, No. 13-11883, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014).

Second, the ALJ found Dr. Wolfe's opinion disproportionate to conservative treatment measures which consisted primarily of pain medication. However, "limited plans are often the

only option with fibromyalgia and courts are accordingly hesitant to use them as evidence of an ability to work." *Cooper*, 2014 WL 4606010 at *18; *see Kalmbach*, 409 F. App'x at 864 (observing "more 'aggressive' treatment is not recommended for fibromyalgia patients"); *Rogers*, 486 F.3d at 247 (noting "testimony by Dr. Leeb that the best treatment for fibromyalgia patients is to exercise regularly"). Moreover, the ALJ did not consider the effectiveness of the Plaintiff's pain medication or the side effects, if any, produced by her mediation. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms are relevant factors for the ALJ to consider in evaluating complaints of pain).

Lastly, the ALJ faulted Dr. Wolfe for relying too heavily on the Plaintiff's subjective allegations. But "since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the treating physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints." *Barker-Bair v. Comm'r of Soc. Sec.*, No. 1:06-CV-00696, 2008 WL 926569, at *7 (S.D. Ohio Apr. 3, 2008) (citing *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003)). Therefore, it was not improper for Dr. Wolfe to base his opinion, at least in part, on the Plaintiff's subjective allegations of pain.

For these very same reasons, the Court finds that the ALJ's decision to assign "some weight" to Dr. Robinson's opinion is undermined. Examination of the Plaintiff produced normal to mild findings except for tenderness throughout the Plaintiff's body, which Dr. Robinson found to be consistent with a diagnosis of fibromyalgia. The ALJ emphasized x-rays that showed degenerative disc disease in the lumbar spine as the only evidence substantiating Dr. Robinson's opinion that the Plaintiff was limited in some capacity. However, x-rays, like most other objective medical evidence, is "not highly relevant in diagnosing fibrositis or its severity." *Preston*, 854

F.2d at 820).

The Court further notes that the ALJ appears to give the greatest weight to the opinion of a nonexamining state agency physician at the initial level as the opinion largely mirrors the RFC determination. [*Compare* Tr. 24 *with* Tr. 72-74]. However, the ALJ erroneously failed to explain why this state agency physician's opinion is entitled to greater deference than any other medical source of record, particularly that of Dr. Wolfe, the Plaintiff's treating physician. The Commissioner's regulations mandate that "[u]nless a treating source's opinion is given controlling weight, the administrative law judge *must explain* in the decision the weight given to the opinions of a State agency medical . . . ." 20 C.F.R. 416.927(e)(3)(ii) (emphasis added). Here, the ALJ neither assigns a specific weight to any of the opinions from the nonexamining state agency physicians, nor does he explain the deference the opinions deserve.

The ALJ's credibility determination is likewise undermined as the ALJ similarly emphasized the lack of objective medical evidence and physical findings, in addition to the routine and conservative treatment the Plaintiff received. *See Canfield v. Comm'r of Soc. Sec.*, No. CIV.A.01-CV-73472-DT, 2002 WL 31235758, at *1 (E.D. Mich. Sept. 13, 2002) ("It is . . . nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking."). The ALJ further cited to the Plaintiff's daily living activities, such as light household chores and taking care of her children. "Yet these somewhat minimal daily functions are not comparable to typical work activities." *Rogers*, 486 F.3d at 248 (criticizing the ALJ's reliance on the plaintiff's ability to engage in activities such as driving, cleaning her apartment, caring for her two dogs, doing laundry, reading, performing stretching exercises, and watching the news); *see* 20 C.F.R. § 404.1572 ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club

activities, or social programs to be substantial gainful activity."). The Court is cognizant that the ALJ's reliance on the Plaintiff's daily living activities was merely to demonstrate that the Plaintiff was not as limited as she alleged, as opposed to evidence that she could perform substantial gainful activity. However, the ALJ's failure to appreciate the diminished potency that objective medical evidence carries in fibromyalgia cases, as well as the heightened importance of a claimant's subjective complaints, critically undermines the ALJ's credibility determination.[2]

Accordingly, the Court finds that remand is appropriate in this case so that the ALJ may reconsider the medical opinions of record, as well as the Plaintiff's credibility.[3] The Court emphasizes that despite the challenges fibromyalgia presents in the evaluation of traditional evidence, "[c]ourts have interpreted [Sixth Circuit precedent] as not establishing special rules for treating source opinions with respect to fibromyalgia." *Adeyemi v. Comm'r of Soc. Sec.*, No. 1:11 CV 423, 2011 WL 6181445, at *7 (N.D. Ohio Dec. 13, 2011) (citing *Cooper v. Astrue*, No. 1:10-CV-00012, 2010 WL 5557448, at *4 (W.D.Ky. 2010)). "The claimant still must prove the

---

[2] The Commissioner argues that the Plaintiff's credibility is also diminished because "she never sought treatment from a rheumatologist." [Doc. 25 at 10]. This District recently rejected the Commissioner's argument that the failure to seek treatment by a rheumatologist undermines the severity of a plaintiff's fibromyalgia. *See Graybeal v. Comm'r of Soc. Sec.*, No. 3:16-CV-560-CCS, 2018 WL 283249, at *5-6 (E.D. Tenn. Jan. 3, 2018) (while a rheumatologist may be the preferred treatment provider for fibromyalgia patients, Social Security Ruling 12-2p, which sets forth the requisite criteria for diagnosing and evaluating the severity of fibromyalgia, does not "require that a claimant be diagnosed or treated by a rheumatologist or other specialist"); *see also Davies v. Colvin*, No. 3:12cv00355, 2013 WL 5947225, at * 10 (S.D. Ohio Nov.6, 2013) (holding that the plaintiff's failure to be treated by a rheumatologist "does not necessarily indicate that Plaintiff's pain levels were less than she described.").

[3] The Court finds, however, that the ALJ's rejection of Dr. Wolfe's conclusion that the Plaintiff is disabled is an issue reserved to the Commissioner and is therefore not entitled to any weight. *See* 20 C.F.R. § 416.927(d)(2)-(3) (findings that a claimant is "disabled" or "unable to work" are findings that invade the Commissioner's exclusive role in determining disability, and, therefore, are not entitled to any special deference).

limitations associated with her fibromyalgia." *Cooper*, 2014 WL 4606010 at *19; *see Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working, . . . but most do not and the question is whether Sarchet is one of the minority.") (internal citations omitted).

VI.  CONCLUSION



Based on the foregoing, the Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 22**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **DENIED**.  Upon **REMAND**, the ALJ shall (1) reevaluate the opinion evidence of record, assigning a specific weight to each medical opinion and providing "good reason" for the weight assigned to Dr. Wolfe's opinion to the extent it is not given controlling weight, and (2) reassess the Plaintiff's credibility.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge